**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| APARICIO PEREZ-OXLAJ,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER BULLOCK, New Orleans Field Office Director of Immigration and Customs Enforcement, Enforcement and Removal Operations,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:26-cv-02916-TLP-tmp |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Aparicio Perez-Oxlaj, a noncitizen detained in the Western District of Tennessee petitions for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1.) The Court ordered Respondent to show cause why the Writ should not be granted. (ECF No. 5.) Respondent responded (ECF No. 6), and Petitioner replied (ECF No. 8). For the reasons below, the Court **DENIES** the Petition and **DISMISSES** this case **WITHOUT PREJUDICE**.

**BACKGROUND**

This is Petitioner's second habeas Petition—the Court granted his first Petition in January 2026. *See Perez-Oxlaj v. Harper*, No. 2:26-cv-02036-TLP-tmp (W.D. Tenn. Jan. 27, 2026).

Petitioner is a Guatemalan citizen who entered the county in 2011. (ECF No. 8 at PageID 43.) U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner late in 2025. (*Id.* at PageID 44.) But the Department of Homeland Security and Executive Office of Immigration Review determined that Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b),

so they never gave him a bond hearing. *See Perez-Oxlaj*, 26-2036, ECF No. 10. This was in line with the Executive Branch's mandatory detention policy at the time. *See, e.g.*, *Monge-Nunez v. Ladwig*, No. 25-3043, 2025 WL 3565348, at *1 (W.D. Tenn. Dec. 12, 2025).

Although Petitioner had not requested a bond hearing, the Court found that such a request would be futile given the Board of Immigration Appeals' ("BIA") precedent under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). And because the Court found that Petitioner's detention was governed by 8 U.S.C. § 1226(a)—which provides for discretionary detention—the Court granted the Petition, enjoined Respondent from further detaining Petitioner under § 1225(b)(2)(A), and ordered Respondent to provide Petitioner with a bond hearing. *See Perez-Oxlaj*, 26-2036, ECF No. 10. An immigration judge later held a custody hearing and released Petitioner in early 2026. (ECF No. 8 at PageID 44.)

The Sixth Circuit issued its decision in *Lopez-Campos v. Raycraft* several months later, affirming that a noncitizen who has spent "significant time . . . within the interior of the United States," and who has not committed an offense rendering them ineligible under § 1226(c), may not be detained without an individualized bond hearing. 175 F.4th 713, 734 (6th Cir. 2026). The majority reasoned that the "text, canons, and past practice" of § 1225 and § 1226 support this conclusion. *Id.* at 725. "To hold otherwise would subject long-term law-abiding residents in the United States, such as Petitioners, to the hardship of mandatory detention without due process." *Id.* at 735.

ICE re-detained Petitioner on July 22, 2026, for an alleged Alternative to Detention ("ATD") violation. (ECF No. 8 at PageID 43, 45.) Petitioner asserts that ICE is again detaining him under § 1225(b). (*See* ECF No. 1 at PageID 7.) He seeks immediate release. (*Id.*)

**ANALYSIS**

Respondent concedes that *Lopez-Campos* governs this matter. (ECF No. 6 at PageID 30.) Even still, Respondent argues that the Court should deny Petitioner's habeas claim as premature because he has not requested a bond hearing with an immigration judge. (*Id.* at PageID 32.) He notes that "Petitioner has been in the custody of [DHS] since July 22, 2026, but []he has yet to request a bond hearing." (*Id.* at PageID 32.)

Petitioner does not state that he has requested a bond hearing before an immigration judge. Petitioner instead asks the Court to excuse administrative exhaustion because "[n]o further administrative fact finding is required to answer whether § 1226(a), rather than § 1225(b)(2)(A), governs Petitioner's detention." (ECF No. 8 at PageID 48.)

Administrative exhaustion is required when mandated by Congress. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). But when, as here, no statute mandates exhaustion, whether to require exhaustion of administrative remedies lies within "sound judicial discretion." *Id.* In exercising that discretion, "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146; *see Smith v. United States Sec. & Exch. Comm'n*, 171 F.4th 312, 325 (6th Cir. 2026) ("This rule is designed to afford the agency the opportunity to reconsider its position in the first instance, and to promote efficient litigation." (citation omitted)). Institutional interests are "protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145.

There are times when the interest of the individual weighs heavily against the institutional interests at stake. Examples of this occur when "unreasonable or indefinite timeframe for administrative action" creates undue prejudice; when administrative remedies are

inadequate because the agency is not "empowered" to grant effective relief; or when "an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id.* at 146–48. A court may also waive exhaustion when pursuing administrative remedies would be futile. *Shearson v. Holder*, 725 F.3d 588, 594 (6th Cir. 2013) (citation omitted).

Despite Petitioner's assertion to the contrary, he is not asking the Court a purely legal question. Indeed, Respondent does not claim that Petitioner is subject to mandatory detention and instead readily concedes that "this case is covered by . . . *Lopez-Campos*." (ECF No. 6 at PageID 30.) So the statutory provision governing Petitioner's detention is not the issue here. To that end, it is telling that Petitioner's arguments go to the merits of his detention. He argues that ICE's alleged "ATD violation" does not establish danger or flight risk and that his continued detention is unnecessary. (*Id.* at PageID 49–51.)

Petitioner's arguments here inherently ask the Court to engage in a fact-based bond analysis. If the Court were to rule in Petitioner's favor, he would be either immediately released without a bond hearing and skip the process of refuting the government's justifications for detaining him—which is the process he is entitled to under 8 U.S.C. § 1226. Or he would receive a bond hearing upon the order of the Court, one which he could have himself requested. Both options cut against "the general rule that parties exhaust prescribed administrative remedies before seeking relief from federal courts." *McCarthy*, 503 U.S. at 144–45 (citation omitted).

It is true that this Court excused exhaustion for some noncitizens, including Petitioner, who challenged their detention before the Sixth Circuit decided *Lopez-Campos*. To be sure, administrative exhaustion was futile back then. *See, e.g.*, *Urrutia-Diaz v. Ladwig*, No. 25-3098, 2025 WL 3689158, at *3–4 (W.D. Tenn. Feb. 13, 2026). But the Court now doubts that

approach in light of the *Lopez-Campos* ruling and Respondent's commitment to apply its holding in the many habeas cases the Court considers each week. *See Rodriguez v. Bullock*, No. 2:26-cv-02726-TLP-tmp (W.D. Tenn. Aug. 3, 2026). The Sixth Circuit has now ruled—and Respondent acknowledges here—that Petitioner is entitled to a bond hearing. And the need for a bond hearing was the entire underpinning of the Court's earlier holdings. Petitioner is entitled to as much here; he just needs to ask for one before an immigration judge.

The Court acknowledges that Petitioner considers that the bond-hearing process imposes a delay or hardship upon him. (*See* ECF No. 13 at PageID 38.) But in effect, Petitioner asks the Court to speculate about how an immigration judge or the Board of Immigration Appeals will decide his bond determination. And he seeks federal-court intervention before an immigration judge has had the opportunity to address a bond request in the first place. Yet habeas corpus relief is not meant to be a means to completely bypass the administrative scheme set out by Congress. The Court declines to bypass that scheme given the developments noted above. *Cf. Jones Bros., Inc. v. Sec'y of Lab.*, 898 F.3d 669, 676 (6th Cir. 2018) ("Before delving into any constitutional quandary, we usually give the Executive a chance to confirm that the relevant statutes and regulations apply to the petitioner in the way that he claims. Without doing so, the courts would have no idea how things would shake out."); *Smith*, 178 F.4th at 325 ("We view the crucial inquiry as whether the agency can provide the relief requested if the argument succeeds, not whether it is likely to succeed." (citations omitted)); *cf. Bartolon v. Bondi*, 813 F. Supp. 3d 811, 825 (S.D. Ohio 2025) ("Petitioner's apparent attempt to sidestep the BIA appeals process in favor of habeas review highlights the need for an exhaustion requirement here to protect agency authority, limit interference with agency affairs, and promote judicial efficiency." (citing *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003)).

**CONCLUSION**

A future habeas petition remains available to Petitioner once he exhausts his administrative remedies. But the Court finds that it would be premature to grant his immediate release here. So for the reasons above, the Court **DENIES** the Petition and **DISMISSES** this case **WITHOUT PREJUDICE**.

**SO ORDERED**, this 18th day of August, 2026.

s/ Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE